UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERATED INDIANS OF GRATON RANCHERIA,<br><br>              Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>              Defendants. | Case No.  24-cv-08582-RFL<br><br>**ORDER GRANTING MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING TO DISMISS AND DENYING 12(B)(7) MOTION TO DISMISS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**<br><br>Re: Dkt. No. 81 |

On January 13, 2025, the federal government took a 68.60-acre parcel of land (the "Shiloh Parcel") into trust for the benefit of Koi Nation ("Koi"), for a proposed casino project. Koi had previously owned that parcel in fee simple, and had been farming the land.  As a result of the land-into-trust transaction, the parcel is now considered Koi's tribal land, meaning that Koi may apply its tribal laws and the land is exempt from various state and federal zoning, tax, and gambling laws.  Another tribe, the Federated Indians of Graton Rancheria ("FIGR"), filed this lawsuit seeking to stop, and now seeking to reverse, the land-into-trust transaction.  Among other claims, FIGR alleges that it has ancestral ties to the Shiloh Parcel, and that the government railroaded FIGR and others in its decisionmaking process by failing to consider the historic preservation concerns and environmental impacts of the land-into-trust transaction, as required under federal law.

Koi now moves to intervene in this lawsuit for the limited purpose of moving to dismiss the case for failure to join an indispensable party.  (Dkt. No. 81.)  For the reasons stated below, Koi's motion to intervene is **GRANTED**.  Koi has a significant legally protectable interest in the Shiloh Parcel, which is its hard-won tribal land, and this litigation threatens to impair that interest by reversing the land-into-trust transaction.

However, Koi's motion to dismiss is **DENIED**.  Koi argues that it must be joined as an

indispensable party, but that it cannot be joined due to its tribal sovereign immunity, so the lawsuit must be dismissed.  By Koi's logic, every land-into-trust transaction would be effectively irreversible, because once the tribe has vested its rights in the land, no lawsuit may seek to challenge the transaction absent the beneficiary tribe's consent to waive immunity—even if the transaction were blatantly illegal in a way that severely harms the public interest.  Nothing in the law requires such a result.  To the contrary, courts have applied a "public rights exception" that exempts suits from dismissal when they seek to vindicate public rights in areas affecting historic preservation or environmental protection.  In those circumstances, so long as the suit does not threaten to *destroy* the nonparty's private entitlements, but merely impairs those rights, the suit may proceed.  Here, Koi's rights are impaired but not destroyed.  Koi has not begun construction on the casino or started gaming operations.  And in the event that the land-into-trust transaction is reversed due to a flaw in the decisionmaking process, Koi would retain the right to continue its existing activities on the land through its ownership of the parcel in fee simple.  Koi would also remain free to seek to have the transaction reinstated after required consultations were completed.  Therefore, dismissal is not required.

## I.    BACKGROUND

Koi has been a federally recognized tribe since 1916.  Before the Shiloh Parcel was taken into trust for the benefit of the tribe, Koi owned the land in fee simple and was actively farming the parcel.  However, prior to the land-into-trust transaction, Koi had no tribal lands held in trust on its behalf.

On November 27, 2024, before the land-into-trust transaction was approved, FIGR filed this lawsuit, alleging that the Department of Interior ("DOI") and its Bureau of Indian Affairs ("BIA") failed to comply with the National Historic Preservation Act's ("NHPA") § 106 consultation requirement in connection with its evaluation of Koi's proposal to take the land into trust in order to allow the tribe to build a casino on the land.  Specifically, FIGR alleged that the Federal Defendants failed to consider FIGR's interests in preserving its ancestral remains and other historical artifacts that may be found on the land.  On December 13, 2024, FIGR moved for

a temporary restraining order to prevent the Federal Defendants from taking the land into trust before they fully complied with the NHPA's statutory requirements.  The Court granted the temporary restraining order, finding that FIGR was likely to succeed on the merits of its case.

On January 10, 2025, however, the Court denied FIGR's motion for preliminary injunction, on the basis that no irreparable harm would result from allowing the land to be taken into trust.  The Court reached that conclusion, in part, because the Federal Defendants represented in their briefing and at the hearing that the land-into-trust transaction could be reversed.  It has now come to light that prior to the preliminary injunction hearing, the Federal Defendants and Koi had communicated about the possibility that Koi might later move to intervene in the case.  And at the hearing on the motion to intervene, the Federal Defendants admitted that they were aware of the Ninth Circuit case law that strongly favors dismissal of the case where a tribe successfully intervenes but cannot be joined based on its sovereign immunity, and that they communicated their awareness to Koi.  However, neither the Federal Defendants nor FIGR raised the possibility that the trust transaction could become irreversible upon Koi's intervention at the preliminary injunction hearing.

On January 13, 2025, the Federal Defendants issued a Record of Decision and a decision letter for the project, taking the Shiloh Parcel into federal trust.  The lawsuit was consolidated on March 20, 2025.  FIGR now seeks to reverse the land-into-trust transaction, alleging that the Federal Defendants violated the NHPA, the Administrative Procedure Act ("APA"), the National Environmental Policy Act ("NEPA"), the Indian Gaming Regulatory Act ("IGRA"), the Indian Reorganization Act ("IRA").  On March 24, 2025, Koi moved to intervene for the limited purpose of moving to dismiss the lawsuit under Rule 12(b)(7) for failure to join an indispensable party.

## II.    MOTION TO INTERVENE

Koi has moved to intervene for the limited purpose of filing a Rule 12(b)(7) motion to dismiss, for failure to join an indispensable party under Rule 19.  A nonparty is entitled to intervene as of right under Rule 24(a)(2) when it "(i) timely moves to intervene; (ii) has a

significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (citing Fed. R. Civ. P. 24(a)(2) and *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)).  The nonparty seeking intervention bears the burden of showing that these requirements are satisfied. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  However, the Ninth Circuit "interpret[s] these requirements broadly in favor of intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).

Koi has met its burden of demonstrating that the Rule 24 requirements are satisfied. Accordingly, Koi is entitled to intervene as of right.

### A.    Timeliness

"A party seeking to intervene must act as soon as [they] know[] or ha[ve] reason to know that [their] interests might be adversely affected by the outcome of the litigation." *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) (quotation omitted).  "To determine whether a motion for intervention as of right is timely, we consider the totality of the circumstances facing the would-be intervenor, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of delay.'" *W. Watersheds Project*, 22 F.4th at 835-36 (quoting *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)).  Each of these factors is "assess[ed] . . . by reference to the 'crucial date' when 'proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties.'" *Kalbers v. Dep't of Justice*, 22 F.4th 816, 822 (9th Cir. 2021) (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)).

Koi's intervention was timely.  As described in greater detail below, Koi's legally protectable interests in this litigation did not arise until the point at which the land was taken into trust.  For that reason, Koi could not have moved to intervene until after the Record of Decision was issued on January 13, 2025, when Koi's application to take the land into trust was approved.

*See, e.g.*, *id.* at 823 ("[W]e discourage premature intervention that unnecessarily squanders scarce judicial resources and increases litigation costs." (quotation omitted)).  Accordingly, the timeliness analysis focuses on the period between the land-into-trust transaction on January 13, 2025, and Koi's motion for intervention on March 24, 2025.

Prejudice is the most important factor in the timeliness analysis.  "The only prejudice that is relevant is that which flows from a prospective intervenor's failure to intervene after [they] knew, or reasonably should have known, that [their] interests were not being adequately represented."  *Id.* at 825 (quotation omitted).  At the hearing, FIGR argued that Koi's delay resulted in prejudice because briefing for summary judgment was already underway, and that the parties expended massive amounts of resources in preparation as a result.  However, Koi responded that on March 31, 2025, it had suggested that briefing on summary judgment be stayed until after the intervention motion was adjudicated, which FIGR rejected.  FIGR did not dispute that account.  As a result, there is no basis to find that Koi's delay resulted in undue prejudice to FIGR.

FIGR also argues that intervention "risks the ultimate form of prejudice to FIGR: the loss of its 'legal claim.'"  (Dkt. No. 92 at 11 (quoting *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987)).)  But, as already explained, for the resulting prejudice to be legally relevant, it "must be connected in some way to the timing of the intervention motion."  *Kalbers*, 22 F.4th at 825.  While Koi's intervention for the limited purpose of moving to dismiss the lawsuit may result in the loss of FIGR's legal claim, that—without more—is insufficient to establish that the motion was untimely because there would have been the same potential for that outcome to occur had Koi moved to intervene on January 13, 2025.

The remaining factors weigh in favor of timeliness as well.  This litigation was filed four months prior to when Koi moved to intervene, and dispositive motions have not yet been adjudicated.  Moreover, Koi's delay in bringing the motion was minimal, as the motion was filed approximately two months after the Record of Decision was issued.  For all of these reasons, Koi's motion was timely.

### B.    Legally Protectable Interest

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)).  The Ninth Circuit has "taken the view that a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006).

Whether Koi has a present interest, rather than a future interest, is crucial to this inquiry. "When dealing with claims challenging federal actions that alter tribal rights, [the Ninth Circuit] ha[s] distinguished between those that would have 'retroactive effects' on rights already enjoyed by a tribe and those 'relating only to the agencies' future administrative process.'" *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 997 (9th Cir. 2020) (quoting *Dine Citizens Against Ruining Our Env't v. BIA*, 932 F.3d 843, 852-53 (9th Cir. 2019)).  Ordinarily, "[a]lthough an absent party has no legally protected interest at stake in a suit seeking only to enforce compliance with administrative procedures, [Ninth Circuit] case law makes clear that an absent party may have a legally protected interest at stake in procedural claims where the effect of a plaintiff's successful suit would be to impair a right already granted." *Dine*, 932 F.3d at 852.  That is true here.

Koi's legally protectable interests arose when the Record of Decision was issued, and the land was taken into trust.  Prior to that date, no rights had been conferred upon Koi, and intervention would have been improper.  *E.g.*, *N. Alaska Env't Ctr. v. Hodel*, 803 F.2d 466, 468-69 (9th Cir. 1986) (finding no legally protected interest at stake in a suit merely to enforce compliance with administrative procedures).  However, once the Shiloh Parcel was taken into trust for the benefit of the tribe, Koi's "protected interest in the trust status of its land," and all of the rights that flow from that change in status, attached.  *Jamul*, 947 F.3d at 997.

For example, now that the land has been taken into trust for the benefit of Koi, the Native American Graves Protection and Repatriation Act ("NAGPRA") governs the treatment of

remains and historical artifacts found on the Shiloh Parcel.  Under NAGPRA, Koi would have priority over other tribes in making important decisions relating to any remains and artifacts that are discovered on the land.  In this case, certain mitigation measures were included in the Environmental Impact Statement that confer consultation rights on other tribes, especially where remains are found in certain areas of the Shiloh Parcel.  Nonetheless, the change in trust status of the land conferred important rights to Koi to control the disposition of remains and historical artifacts found on the land.

More generally, taking land into trust confers significant benefits, including tribal jurisdiction over the land, tax exemptions, land use protections, and rights to engage in Class I and Class II gaming.  It also provides a pathway to pursue Class III gaming rights.  When the land was taken into trust, all of these interests attached as well.  These benefits are particularly salient in the case of Koi, which had been waiting for decades for land to be taken into trust on its behalf.  Although Koi has been federally recognized as a tribe since 1916, Koi has no other tribal lands over which it has sovereignty and may apply its tribal laws.  This lawsuit seeks to reverse that transaction, leaving Koi without tribal lands again.  As such, the claims seek to impair Koi's "already granted" rights.

At the hearing, FIGR argued that finding a significant protectable legal interest in this case would have sweeping effects, due the volume of lands held in trust by the federal government on behalf of tribes.  To be clear, a protectable interest does not necessarily arise in every situation in which a lawsuit touches on activity on lands held in trust.  However, where the aim of the lawsuit is to divest a tribe of its sole tribal lands, that tribe has a significant vested interest in the case.

### C.    Impairment

Once it is determined that a non-party possesses a legally protectable interest in an action, it is not difficult to conclude that the outcome of the litigation might impair that interest.  *See California ex rel. Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a

practical matter, affect it." (citation omitted)).  Koi has made such a showing.  If FIGR prevails in its lawsuit, a necessary consequence would be to order the federal government to review their Environmental Impact Statement and subsequent Record of Decision, which authorized the Shiloh Parcel to be taken into trust.  As previously described, Koi's interests vested at the point at which the land was taken into trust, and thus, any order to redo the consultation and environmental review process, or to reverse the land-into-trust transaction, has the potential to impact Koi's interests.

####    D.    Adequate Representation

Furthermore, Koi is required to show that its interests may not be adequately represented by the Federal Defendants.  "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interest '*may be*' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added)).  That is especially true in "disputes involving intertribal conflicts," as courts have recognized that "the United States cannot properly represent any of the tribes without compromising its trust obligations to all tribes." *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994) (citing *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991) and *Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990)).  "To evaluate adequacy of representation, courts consider three factors (1) whether the interest of a party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *W. Watersheds Project*, 22 F.4th at 840-41.

Koi has carried its burden of showing that over the course of this litigation, the Federal Defendants' and Koi's interests might not remain aligned.  Under Ninth Circuit precedent, that is sufficient.  In *Dine*, the Ninth Circuit recognized that where the federal government's ultimate objective differs from that of the tribe's, the Federal Defendants "cannot be counted on to adequately represent [the tribe's] interests." *Dine*, 932 F.3d at 855.  In that case, the court

recognized that the interests "differ[ed] in a meaningful sense" because the tribe had a "sovereign interest in ensuring the [a] Mine and Power Plaint continue[d] to operate and provide profits to the Navajo Nation." *Id.* However, while the Federal Defendants had "an interest in defending their decisions," their "overriding interest . . . must be in complying with environmental laws such as NEPA and the [Endangered Species Act]." *Id.* As the Ninth Circuit explained, "[i]f the district court were to hold that NEPA or the ESA required more analysis that would delay mining activities, or that one of the federal agencies' analyses underlying the approval was flawed, the Federal Defendants' interest might diverge from that of [the tribe]." *Id.* In that scenario, the Federal Defendants could not be expected to adequately represent the tribe's interests throughout the course of the litigation. *Compare id.*, *with Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998) (holding that the federal government could adequately represent a tribe's interests in the litigation where it "share[d] a strong interest in defeating [the] suit on the merits and ensuring that the [water storage facility was] available for use as soon as possible"). Under Ninth Circuit precedent, the possibility that there "may be" an inadequacy in representation at a later juncture is sufficient. *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086).

The Ninth Circuit reached a similar conclusion in *Maverick Gaming LLC v. United States*, 123 F.4th 960 (9th Cir. 2024). There, the court held that the Federal Defendants could not adequately represent the tribe's interests because while the parties "share[d] an interest in the ultimate outcome of [the] case," it was "for very different reasons." *Id.* at 974 (quoting *Klamath Irrigation Dist. v. United States Bureau of Reclamation*, 48 F.4th 934, 945 (9th Cir. 2022)). Despite the parties sharing an interest in defending the Secretary of Interior's approval of gaming compacts and sports betting compact amendments, the court recognized that the federal government was motivated by its "interest in defending its own analysis that formed the basis of its decision," whereas the tribe was motivated by its "interest in the *outcome* of the continued approval of the sports-betting compact amendments—the continued operation of sports-betting at casinos." *Id.* at 974-75 (emphasis in original). The court found that this divergence in

motivation was sufficient to conclude that the Federal Defendants could not adequately represent the tribe.

At this stage of the litigation, the Federal Defendants and Koi may share an interest in defending the Record of Decision and subsequent land-into-trust transaction.  However, while that may be where the Federal Defendants' objectives lie, it is only where Koi's begin.  If, for example, this Court were to conclude that the Federal Defendants did not comply with the NHPA before issuing its Record of Decision, "it is questionable whether" the Federal Defendants and Koi "would pursue the same next course of action."  *White v. University of California*, 765 F.3d 1010, 1027 (9th Cir. 2014).  At that point, for example, the Federal Defendants might be willing to settle the case in exchange for undoing the land-into-trust transaction and consulting further with FIGR concerning its potential ancestral remains and artifacts, before revisiting the decision.  However, Koi's interest is in ensuring that the Shiloh Parcel remains in trust for the benefit of the tribe—and ultimately, that it can receive a Class III gaming compact.  That Koi's interests may diverge from the Federal Defendants is sufficient to find that Koi cannot be adequately represented in this lawsuit.  Moreover, in the event of conflicts between Koi and FIGR, whose interests are diametrically opposed in this litigation, the Federal Defendants might not be able to represent Koi while also representing FIGR's interests in accordance with its trust obligations to both tribes.

In conclusion, Koi is entitled to intervene as of right under Rule 24(a).

### III.    MOTION TO DISMISS

Koi has intervened for the limited purpose of filing a Rule 12(b)(7) motion to dismiss, for failure to join an indispensable party under Rule 19.  Rule 19 "sets the framework" for determining whether a party is required and indispensable, and whether dismissal of the lawsuit is appropriate where joinder of that party is infeasible.  *Friends of Amador Cnty. v. Salazar*, 554 F. App'x 562, 564 (9th Cir. 2014).

#### A.    Required Party

Rule 19(a) provides a "two-pronged inquiry" for determining whether a party is required:

> First, the court must determine whether complete relief can be afforded if the action is limited to the existing parties. Second, the court must determine whether the absent party has a legally protected interest in the subject of the action and, if so, whether the party's absence will impair or impede the party's ability to protect that interest or will leave the existing party subject to multiple, inconsistent legal obligations with respect to that interest. If the answer to either of those questions is affirmative, then the party is necessary and must be joined.

*White*, 765 F.3d at 1026 (quotations and citations omitted). This inquiry is "practical" and "fact specific." *Makah*, 910 F.2d at 558.

FIGR argues that Koi is not a required party under Rule 19(a) "for much the same reasons" as it articulated in its opposition brief to the motion to intervene: that is, because Koi lacks a vested legal interest and, in any event, because the Federal Defendants can adequately represent Koi in this litigation. (Dkt. No. 93 at 9.) As previously explained, both of those arguments fail. Thus, for purposes of Rule 19(a), Koi is deemed a required party that must be joined.

### B.  Where Joinder is Infeasible

Koi did not abrogate its tribal sovereign immunity, and thus cannot be feasibly joined. Under Rule 19(b), if the party "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Courts consider four nonexclusive factors when making this determination: (1) "the extent to which a judgment rendered in the [party's] absence might prejudice that [party] or the existing parties"; (2) "the extent to which any prejudice could be lessened or avoided by [] protective provisions in the judgment" or by "shaping the relief"; (3) "whether a judgment rendered in the [party's] absence would be adequate"; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b); *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862 (2008) ("The considerations set forth in subdivision (b) are nonexclusive, as made clear by the introductory statement that 'the factors for the court to consider include.'" (quoting Fed. R. Civ. P. 19(b))).

### 1.     Rule 19(b) Enumerated Factors

Where "no alternative forum exists," courts should be "extra cautious before dismissing an action." *Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (quotation omitted). But "[i]f the necessary party is immune from suit, there may be 'very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.'" *Id.* (quoting *Confederated Tribes v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991)). "Indeed, [the Ninth Circuit] ha[s] observed that there is a 'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity." *Dine*, 932 F.3d at 857 (quoting *White*, 765 F.3d at 1028)).

The first factor "largely duplicates the considerations that ma[ke] a party necessary under Rule 19(a)" and entitled to intervene as of right under Rule 24(a). *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002). Because FIGR's suit seeks to invalidate the Record of Decision, and therefore reverse the land-into-trust transaction, judgment rendered in Koi's absence could prejudice the party. This factor favors dismissal.

Moreover, because FIGR is seeking wholesale reversal of that transaction, the prejudice that would result from any decision could not be mitigated by shaping the relief. FIGR argues that the Court could reduce the prejudice to Koi by ordering "prospective" interim relief only while "DOI consults with FIGR and re-evaluates the [Environmental Impact Statement], the ROD, and the Decision Letter." (Dkt. No. 93 at 14.) But even if the relief "could be shaped to avoid prejudice in the short term . . . [Koi] inevitably would be prejudiced if [FIGR] ultimately succeeded" in their lawsuit. *Dine*, 932 F.3d at 843. The second factor favors dismissal as well.

The third factor weighs against dismissal, as it is the federal government's duty to comply with the NHPA, IGRA, IRA, NEPA, and the APA, not Koi's. *See e.g.*, *id.* at 858; *Maverick Gaming*, 123 F.4th at 981. Thus, a judgment rendered in Koi's absence would be adequate.

Finally, the fourth factor cuts against dismissal, as FIGR is unlikely to have an adequate remedy if the action is dismissed for nonjoinder. However, as the Ninth Circuit explained in

*Dine*, courts "have recognized that the lack of an alternative remedy is a common consequence of sovereign immunity" and that "tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." *Dine*, 932 F.3d at 858 (quoting *Am. Greyhound*, 305 F.3d at 1025). In this context, that FIGR would be deprived of a forum to litigate its claims is insufficient to overcome Ninth Circuit precedent favoring dismissal.

Taken together, the 19(b) enumerated factors weigh in favor of dismissal.

### 2. General Equity Concerns

However, Rule 19(b)'s enumerated factors are intended to be nonexclusive. *Republic of Philippines*, 553 U.S. at 862. Given the procedural history of this case, it bears worth addressing the general equities at play: On December 27, 2024, FIGR moved for a preliminary injunction—before the Record of Decision was issued and the land was taken into trust. The Court denied the motion on the basis that no irreparable harm would result from allowing the land to be taken into trust. The Court reached that conclusion, in part, because the Federal Defendants represented in their briefing and at the hearing that the land-into-trust transaction could be reversed.

It has now come to light that at the time of the preliminary injunction hearing, the Federal Defendants were aware of the possibility that Koi might later move to intervene. Email records indicate that, as early as December 12, 2024, the attorneys for the Federal Defendants and Koi discussed the possibility of Koi's intervention in the lawsuit. (Dkt. No. 122-2.) Moreover, at the hearing on the motion to intervene, the Federal Defendants admitted that they were aware of the Ninth Circuit case law that would favor dismissal of the case were Koi to successfully intervene, and communicated that information to Koi prior to the hearing on the preliminary injunction.

Thus, it appears likely that the Federal Defendants were aware of the irreparable harm that might result if the land-into-trust transaction were to proceed: that is, that the land-into-trust transaction would provide a basis for Koi's intervention for the limited purposing of dismissing this case, therefore rendering the transaction irreversible. Yet, the Federal Defendants nonetheless repeatedly represented otherwise to the Court, insisting that the transaction could be

easily reversed.

At the same time, there is no indication in the record that Koi encouraged the Federal Defendants to make this argument at the preliminary injunction stage, or that Koi expressly told the Federal Defendants that it would move to intervene at a later stage in the case in order to get the case dismissed. Thus, it would be unfair to stick Koi with the Federal Defendants' representations as a basis for denying dismissal, when the very purpose of allowing intervention is to address the possibility that the current party to the lawsuit might not adequately represent the intervenor's interests.[1]

Moreover, FIGR was likewise aware of Koi's interest in the Shiloh Parcel, and could also have foreseen the possibility of Koi's motion to intervene and dismiss, but did not assert irreparable harm on that basis either. Given that Koi could not have intervened until after the land was taken into trust, its discussions with the government about the possibility of intervention, standing alone, are not a sufficient basis for the Court to exercise its equitable discretion to deny dismissal under Rule 19(b).

### C.    Public Rights Exception

A lawsuit that would otherwise be dismissed under Rule 19(b), however, may continue where it seeks to vindicate public rights. "The contours of the public rights exception have not been clearly defined. Generally, however, the litigation must transcend the private interests of the litigants and seek to vindicate a public right. Further, although the litigation may *adversely affect* the absent parties' interests, the litigation must not *destroy* the legal entitlements of the absent parties." *Kescoli*, 101 F.3d at 1311 (citations and quotations omitted). That is precisely

---

[1] At the hearing, FIGR cited *Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003) for the proposition that a later intervenor is bound by the representations made by an existing party at an earlier point in time, even if that party had not yet intervened in the case. However, *Newsome* explains only that where a court has already made specific evidentiary and legal rulings, a later intervenor's "variations (or recapitulations) of arguments that [the court] found unconvincing the last time around" may be "preserved [] for presentation to a higher court, but in [the same] tribunal they are barred by the law of the case." *Id.* at 303. Though Koi, as the later intervenor, may be held to prior conclusions of law made by this Court, *Newsome* does not imply that the Court should attribute the Federal Defendants' litigation conduct to Koi in assessing whether Koi acted inequitably.

the situation here.

This lawsuit vindicates a broader public interest in the application of laws seeking to preserve historical resources and safeguard the environment.  FIGR's litigation against the government "seeks to enforce the public right to administrative compliance with the [federal] standards" of the NHPA and NEPA.  *Conner v. Burford*, 848 F.2d 1441, 1460 (9th Cir. 1988). *See also* 36 C.F.R. § 800.1(a) ("The section 106 [consultation] process seeks to accommodate historic preservation concerns with the needs of Federal undertakings through consultation" and the "goal of consultation is to identify historic properties potentially affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any adverse effects on historic properties"); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 348 (1989) ("NEPA declares a broad *national commitment* to protecting and promoting environmental quality." (emphasis added)).  At the crux of FIGR's claims is its contention that the federal government did not properly consult the tribe when engaging in its review process under the NHPA and NEPA.  *Env't Prot. Info Ctr. v. Carlson*, 968 F.3d 985, 992 (9th Cir. 2020) ("The public interest is served by requiring the [federal government] to comply with the law").  The purpose of these statutes is to ensure that historical preservation and environmental impacts are sufficiently considered in the course of the federal government's decisionmaking process.  These broader procedural rights are public in nature, and transcend pure private interests.  *Compare Conner*, 848 F.2d at 1459 (finding lawsuit transcended private interests where plaintiffs were seeking to enforce administrative compliance with NEPA and the ESA), *with Maverick Gaming*, 123 F.4th at 982 (finding lawsuit did not transcend private interests where the objective was to challenge the validity of tribal gaming compacts under IGRA to be freed from competition in Indian gaming).

Additionally, while this litigation has the potential to adversely affect Koi's interests, the litigation does not threaten to *destroy* Koi's legal entitlements to the Shiloh Parcel.  As courts have repeatedly recognized, the vindication of public rights will often place a "burden on the [vested] rights of nonparties," but such burdens are "acceptable" if "such adjudications do not

destroy the legal entitlements of the absent parties." *Conner*, 848 F.2d at 1459.  Courts have "refused to require the joinder of all parties affected by public rights litigation—even when those affected parties have property interests at stake—because of the tight constraints traditional joinder rules would place on litigation against the government." *Id.* (citation omitted).  To find "intervenors indispensable" whenever property rights are affected would "sound[] the death knell for any judicial review of executive decisionmaking." *Id.*

Accordingly, the public rights exception requires a close examination of whether the suit threatens to destroy, rather than only impair, a nonparty's interests.  In *Conner*, the plaintiffs sued the Bureau of Land Management for violating NEPA and the ESA in the process by which BLM decided to sell oil and gas leases in national forests.  *Id.*  The district court enjoined the federal government from "permitting any surface-disturbing activity to occur on any of the leases" until the government had complied with NEPA and the ESA.  *Id.*  The Ninth Circuit found that the public rights exception applied, and the nonparty lessees did not need to be joined in the litigation.  Obviously, since the entire purpose of the lease was to conduct surface-disturbing oil and gas extraction, that significantly affected the interests of nonparty lessees.  But the nonparty lessees' rights were not destroyed, only impaired, because the lessees retained "many of the fundamental attributes of their contracts," such as the ability to exclude others from engaging in oil and gas activities on the land in the meantime.  *Id.* at 1461.  The court noted that the lessees could still sue the federal government, though they would not be able to obtain specific performance of the contractual right to surface-disturbing activities, as is necessary for oil and gas extraction.  *Id.*  In the end, the Court emphasized that, because no surface-disturbing activities had yet begun, the "legally protected interests of the lessees were barely affected" by requiring the government to reconsider allowing those activities.  *Id.*

Likewise, here, while the land-into-trust decision may have conferred rights on Koi, it does not appear that this litigation threatens to *destroy* the fundamental attributes of those interests.  First, no gaming activity is already underway.  Koi is still in the process of pursuing its Class III gaming authorization.  Although it may currently possess the rights to engage in Class I

and Class II gaming, this litigation does not threaten to destroy Koi's interests in already established revenue or activity associated with those rights. Moreover, Koi already holds the land in fee simple. Thus, its interest in the land would not be destroyed, even if the Court were to ultimately order the land-into-trust decision reversed until the Federal Defendants complied with the NHPA and NEPA. Koi would still have rights to farm the land, and to engage in the same activities it has been doing on the land up until this point. Moreover, even if the land-into-trust transaction were reversed due to inadequacies in the decisionmaking process, Koi would not be foreclosed from seeking to have the transaction reinstated following proper review.

*Dine*, on which Koi relies, confirms this analysis. *Dine* reaffirmed the principle in *Conner* that "[t]he public rights exception may apply in a case that could 'adversely *affect* the absent parties' interests, but 'the litigation must not *destroy* the legal entitlements of the absent parties' for the exception to apply." *Dine*, 932 F.3d at 859 (quoting *Conner*, 848 F.2d at 1459 (emphasis added)). There, the BIA had already granted lease agreements, rights-of-way, and government-issued permits that authorized the operation of the mine and power plant. The nonparty had "moved mining operations into the areas designated," implemented "conservation measures" required by the Record of Decision, and procured "a new $115 million line of credit" secured by the mine as an asset. *Id.* In declining to apply the public rights exception, the Ninth Circuit held:

> If the Record of Decision that granted such approval were vacated, then those agreements would be invalid, and [the nonparty] would lose all associated legal rights. And, unlike in *Conner* where surface-disturbing activity had apparently not even been authorized or begun, the activities approved by the Record of Decision here are already taking place. This litigation therefore threatens to destroy [the nonparty's] existing legal entitlements.

932 F.3d at 860. *Dine* therefore concluded that its situation was more akin to *Kescoli*, where the mining operations at issue had been ongoing for twenty years prior to the lawsuit, than it was to *Conner*. *Id.* Here, by contrast, Koi identifies no existing legal entitlements that would be similarly destroyed. This case is much more like *Conner* than it is like *Kescoli* and *Dine*.

Koi suggests that *Dine* nonetheless sought to foreclose the use of the public rights

exception entirely whenever litigation affects an absent tribe's interests. By Koi's logic, every land-into-trust decision would be rendered effectively unreviewable, no matter how significant the public interests at stake might be or how egregiously illegal the decision was. In Koi's view, the act of taking land into trust vests tribal rights that would be destroyed by reversal of the decision, so the courts could *never* have jurisdiction to review that transaction unless the tribe on whose behalf the land was taken into trust agreed to waive sovereign immunity. Nothing in *Dine* supports that breathtakingly broad view of tribal sovereignty. *Dine* did recognize that, in situations where courts do indeed refuse to apply the public rights exception, that will preclude review of government decisions about development on tribal lands, and observed that this result was "for Congress to address, should it see fit," rather than the courts. *Id.* at 861. But *Dine* did not instruct the lower courts to ignore the public rights exception in the context of government actions involving tribal lands, nor would such a result comport with the purpose behind the public rights exception.

Therefore, the public rights exception applies, and Koi's motion to dismiss for failure to join an indispensable party is denied.

## IV.     CONCLUSION

Based on the foregoing reasons, Koi's motion to intervene for the limited purpose of moving to dismiss is granted. However, Koi's motion to dismiss under 12(b)(7) for failure to join an indispensable party is denied. As Koi has not waived its sovereign immunity, it will not be joined to this litigation.


**IT IS SO ORDERED.**

Dated: July 18, 2025

RITA F. LIN
United States District Judge